COWART, Judge,
dissenting:
An attorney representing the victim of a negligent insured sent a demand letter to the insurer dated November 20, 1978, offering to settle but stating that if the insurer did not “tender” the policy limits within 21 days of the date of the letter (being December 11, 1978), the offer to settle would be withdrawn. A certain telephone conversation between the attorney and the insurer’s adjuster occurred between December 5th and 8th. The attorney filed suit on December 13th and on December 14th received by mail settlement drafts dated December 12th. The insurer pleaded settlement and both parties moved for summary judgment on the settlement issue. The insurer filed the adjuster’s affidavit and the plaintiff filed the attorney’s affidavit and deposition.
The attorney’s demand letter constituted an offer to enter into a unilateral contract. This offer could only be accepted by the offeree’s performance of the act proposed in the offer, i. e., the “tender” of the policy limits.[1] Furthermore, by the express terms *404 of the offer, the tender had to be within 21 days of the date of the letter for a binding contract to result. There is no dispute but that the tender took place after the time allotted in the letter had expired, so the only question presented is whether, in the telephone conversation, the attorney orally modified his written settlement offer and extended the original time limitation.
In his affidavit and deposition the attorney states that in the telephone conversation the adjuster had stated that authority to settle had been received and that the settlement drafts would be in the mail that day; that the attorney reiterated that the drafts had to be in the attorney’s office by the 21st day (December 11, 1978) and the adjuster did not request an extension of time nor did the attorney approve an extension of time. The adjuster’s affidavit was that the adjuster advised the attorney that the insurer would pay policy limits and that the adjuster stated that “because the end of the year was approaching, there was a heavy workload but that I would be issuing the drafts as soon as possible. Attorney Sisserson acknowledged and approved of this procedure.” These are the only two witnesses to the telephone conversation which is the entire factual event in question. Should the adjuster’s vague claim that the attorney “approved this procedure” defeat the plaintiff’s motion for summary judgment? The answer should be “no” for several reasons.
First, the word “procedure” means a particular way of accomplishing something or of acting and does not relate to “when” or time. Unless we unnecessarily ascribe to it a broad general inference all it means, in context, is that the attorney approved the adjuster issuing the drafts “as soon as possible.” The adjuster’s and the attorney’s affidavits and depositions are not in conflict and should not be construed to be in conflict.[2] The adjuster never states that the attorney extended the final date for acceptance of his written settlement offer and the attorney’s recollection that the adjuster said the drafts would “be in the mail that day” is consistent with the adjuster’s recollection that the drafts would be issued “as soon as possible.” Also, the attorney’s approval “of this procedure” is consistent with his original demand letter and with the drafts being issued “as soon as possible” and put “in the mail that day,” subject only to mail posted on December 5th or 8th being delivered on or before December 11th, all of this is consistent with the original demand letter and with the conclusion that there was no modification of the original written offer. There is no conflict between the assertions of the two affiants. The conflict is between the parties as to the effect of the words spoken.
Secondly, the trial court could have correctly disregarded[3] the adjuster’s statement that the attorney “approved this procedure” as being conclusional and insufficient to controvert the attorney’s clear testimonial evidence that he did not extend the time limitation in his offer. Statements, which are contained in affidavits, in order to be considered on a motion for summary judgment, must be of such evi-dentiary value that they would be admissible at trial.[4] Therefore, the affidavit may not be based upon factual conclusions or conclusions of law[5] or merely allege ultimate facts.[6]
*405 Thirdly, by the customary use of general verdicts in jury trials juries not only do their basic job of resolving conflicts in evi-dentiary factual disputes to “find” the true facts, but are also given the responsibility of applying to those facts the law as given to them by the court.[7] This custom should not mean that when, as here, all of the material evidentiary facts are given by affidavit and deposition and the dispute is not as to, or between, the evidentiary facts but is as to their legal competency, admissibility, or meaning and effect, that the court cannot by legal analysis determine the legal question presented on summary judgment much as, on a law examination, a law student considers the legal effect of a given set of facts. The sole question was whether, in the telephone conversation, the attorney modified the time limitation contained in his written settlement offer. The trial court should be permitted to accept as true the versions of both affiants and resolve the case as a matter of law after determining the legal significance, if any, of the entire telephone conversation.
Fourthly, even if one sees conflict in the testimony of the parties to the telephone conversation, that conflict is not necessarily one to be resolved by a jury on the basis of credibility and probability as is usual when there are irreconcilable conflicts between inconsistent evidentiary facts. This is because, in disputes as to the formation of contractual relationships, differences in understanding between the parties can itself have a special legal significance as indicating the lack of mutual assent or the absence of a meeting of the minds between the parties.[8] The trial judge’s case citations [9] suggest that he deliberated this proposition in reaching his decision. The trial judge did not have to go this far in his legal reasoning because mutual assent or an agreement between the two parties is not involved. Only the attorney’s unilateral offer is involved. He did not have to make a settlement offer in the first place. There was no consideration for his promise. He could withdraw it at any time before it was accepted.[10] Only the attorney could modify his offer and he could modify it without any consent or agreement by the adjuster. Conversely, no acts or words of the adjuster could modify the attorney’s offer or extend the time for its acceptance.
Finally, the presumption of correctness with which judgments and orders of the trial court reach an appellate court applies to orders granting summary judgments[11] and should be given weight.
For the reasons given I would affirm the trial court’s order granting the plaintiff’s motion for summary judgment on the defendant’s affirmative defense of settlement.

. The trial judge held that willingness, readiness and ability do not constitute a tender, citing Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929), hence the attorney’s written settlement offer could not be accepted over the telephone but only by the actual offer or delivery of settlement drafts. The trial judge also ruled that the retention of the settlement drafts, as evidence of their belat *404 ed delivery, did not create an executed unilateral contract.

. All witnesses are presumed to speak the truth. Indulgence in this presumption casts a duty on all men of good will, judges and jurors alike, to construe and reconcile spoken and written words so as to avoid conflict between witnesses whenever it is possible and reasonable to do so. See Florida Standard Jury Instructions in Criminal Cases 2.13(a).

. Humphrys v. Jarrell, 104 So.2d 404 (Fla. 2d DCA 1958).

. Food Fair Stores, Inc. v. Trusell, 131 So.2d 730 (Fla.1961); Garwood v. The Equitable Life Assurance Society of the United States, 299 So.2d 163 (Fla. 3d DCA 1974); Stringfellow v. State Farm Fire & Casualty Co., 295 So.2d 686 (Fla. 2d DCA 1974).

. Hurricane Boats, Inc. v. Certified Industrial Fabricators, Inc., 246 So.2d 174 (Fla. 3d DCA 1971); O’Brian Associates of Orlando, Inc. v. Tally, 184 So.2d 202 (Fla. 4th DCA 1966).

. Lake v. Konstantinu, 189 So.2d 171 (Fla. 2d DCA 1966).

. Rather than merely having the jury determine the true evidentiary facts by special verdict, to avoid the troublesome process of analysis, it is easier just to make them also determine the ultimate facts and legal conclusion as well after they are “doused with a kettleful of law, during the charge, that would make a third-year law student blanch.” Green Springs, Inc. v. Calvera, 239 So.2d 264, 266 (Fla.1970).

. “The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not the parties having meant the same thing, but on their having said the same thing.” Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957). See also Kendel v. Pontious, 261 So.2d 167 (Fla.1972).

. Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539 (Fla.1947); Strong & Trowbridge Co. v. H. Barrs & Co., 60 Fla. 253, 54 So. 92, 93 (Fla.1910).

. The filing of suit before receipt of the settlement drafts constituted a withdrawal of the settlement offer. A “tender” of the drafts was not accomplished by mailing them. They were received after suit was filed.

. See Coffman Realty, Inc. v. Tosohatchee Game Preserve, Inc., 381 So.2d 1164 (Fla. 5th DCA 1980); Protective Nat’l Ins. Co. of Omaha v. Bergouignan, 335 So.2d 871 (Fla. 3d DCA 1976).